UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

MICHAEL ALAN CROOKER,          :
            Petitioner,        :
                               :
    v.                         :          CA 11-16 M
                               :
BRIAN K. MURPHY, WARDEN,       :
et al.,                        :
            Respondents.       :

**REPORT AND RECOMMENDATION**

David L. Martin, United States Magistrate Judge

Before the Court is a motion filed by Petitioner Michael Alan Crooker ("Petitioner" or "Crooker"), a federal prisoner presently confined at the Donald W. Wyatt Detention Facility ("Wyatt") in Central Falls, Rhode Island, pending sentencing by the United States District Court for the District of Massachusetts.[1] By the motion, Murphy seeks an order from this Court requiring that he continue to be detained "at Wyatt until his locally scheduled surgeries are completed." Crooker's Motion for an Injunction

---

[1] Petitioner pled guilty on March 28, 2011, in the District of Massachusetts to one count of mailing a threatening communication to an officer of the United States in violation of 18 U.S.C. § 876(c) (Count One) and one count of possession of a toxin (ricin) without registration in violation of 18 U.S.C. § 175(b)(c)(1) (Count Nine). See United States v. Michael A. Crooker, Criminal Number 07-30037-MAP (D. Mass.) (the "Mass. Case"). Sentencing is scheduled for June 20, 2011. According to Crooker, he "is to be sentenced ... to 15 years with pretrial credit back to 2004." Crooker's Motion for an Injunction Requiring his Continued Detention at the Wyatt Detention Facility and Prohibiting his Transfer to the Federal Bureau of Prisons Pending Surgeries (Docket ("Dkt.") #7) ("Motion for Injunction" or "Motion") at 2.

Requiring his Continued Detention at the Wyatt Detention Facility and Prohibiting his Transfer to the Federal Bureau of Prisons Pending Surgeries (Docket ("Dkt.") #7) ("Motion for Injunction" or "Motion") at 3. The Government has filed an objection to the Motion. See Government's Objection to Motion for Injunction (Dkt. #10) ("Government's Objection").

The Motion has been referred to me for preliminary review, findings, and recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B). See Seldon v. Lehman Bros., Inc., No. 09-13162, 2010 WL 2351492, at *1 (E.D. Mich. May 20, 2010)("Pursuant to 28 U.S.C. § 636(b)(1), a magistrate judge may only issue a report and recommendation regarding a request for injunctive relief."); see also Guan Zhao Lin v. Holder, No. 10 Civ. 4316(RMB)(JLC), 2010 WL 2836144, at *1 n.1 (S.D.N.Y. July 2, 2010)("A magistrate judge does not have authority to grant or deny injunctive relief, absent the parties' consent under § 636(c)."). No hearing is required. After reviewing the parties' filings and researching the applicable law, I recommend that the Motion be denied because this Court lacks jurisdiction to grant the relief Crooker seeks.

## Background

On January 21, 2011, Crooker filed a Petition for Writ of Habeas Corpus (Dkt. #1) ("Petition") seeking "declaratory and injunctive relief to ameliorate long-term medical neglect that is ongoing and which constitutes a violation of the United States

2

Constitution." Petition ¶ 1. In support of his request for relief, Crooker alleges that he "has been in custody continuously since his federal arrest on June 23, 2004, either under the authority of the United States Marshals Service ["USMS"] or the Federal Bureau of Prisons ["BOP"]." Id. ¶ 4. During this time, Crooker states that he has been transferred sixteen times among various institutions. See Affidavit of Michael Alan Crooker with Respect to Deprivation of Medical Care during 6 ½ Years of Imprisonment ("Petitioner's Aff.") ¶¶ 17-38; id. ¶ 38 (referring to Wyatt as his "17th institution"). He alleges that he "has and continues to be deprived of medical treatment, to wit, cataract surgery, gall bladder surgery, and dental restoration for 11 missing teeth." Petition ¶ 12. The reason for this deprivation, according to Crooker, is largely because "all these institutions do is 'pass the buck,' claim that I am not their prisoner, am only temporary, and therefore must wait for treatment at some future prison." Petitioner's Aff. ¶ 11. While his name has been placed on waiting lists for treatment when he has remained at institutions for periods longer than a few months, Crooker has been transferred from these institutions before his name has been reached. See id. ¶¶ 26-27 (stating that while at his tenth institution, FCI-Victorville, from 9/26/07 to 9/5/08 his name was placed on a waiting list for restorative dental care (dentures or partial plates, etc.), but his name had not been reached by the time of his

3

transfer from that institution); id. ¶¶ 30-32 (attesting that he was placed on a dental waiting list while confined at his thirteenth institution, FCI-Loretto, from 9/18/09 to 9/13/10, that he was told the list for routine care moved very slowly, and that the wait for such care is four years); see also id. ¶¶ 33-34 (citing 9/16/09 statement from FCI-Loretto Health Services Administrator that Petitioner would be "on call-out in the very near future to receive" his non-emergency dental treatment but stating that he did not see the dentist prior to his court-ordered release on September 13, 2010).

### Parties' Contentions

According to Crooker, the filing of the Petition "triggered" the following events. On March 24, 2011, he was taken by Wyatt security guards to the Blackstone Valley Medical Center in Providence for an ultrasound examination. See Motion at 1. On April 1, 2011, he was taken by Wyatt security guards to Klibanoff Eye Associates in Pawtucket for an eye examination. See id. According to Crooker, the costs associated with these examinations were borne by the USMS. Id. Crooker alleges that on April 14, 2011, the consulting physician at Wyatt examined him and reviewed both the ultrasound report and the eye examination report. See id. at 1-2. Crooker further alleges:

> (4) The Wyatt doctor recommended to the [USMS] that Crooker be given gall bladder surgery due to a 22mm gallstone. He also recommended that Crooker be given cataract surgery due to right eye impaired vision of

20/100.

     (5)  The Wyatt doctor explained to Crooker that the
     referrals, approvals, and further appointments extended
     out to the actual surgeries could take up to five months.

Id. at 2.

Crooker notes that he is scheduled to be sentenced on June 20, 2011, and that ordinarily he would "be shipped off to the [BOP] within 4-6 weeks of June 20, 2011, or in July-August, 2011." Id. Crooker asserts that "[t]his transfer, Crooker's 18th, will likely coincide with, interfere with, and deprive Crooker of his surgeries." Id.  He further asserts that:

     The [USMS] is known for shipping Wyatt detainees off
     to the BOP who are within days of scheduled surgeries.
     These detainees then start a months-long or years-long
     process all over again, including unnecessary further
     pain and suffering, all because one component agency of
     the U.S. Department of Justice fee-shifted responsibility
     to another component.

     Crooker has already suffered from many years of
     medical neglect and he requests that this court put a
     cease to it by ordering that this 18th transfer be court-
     order delayed for whatever time is necessary to obtain
     the required surgeries, estimated not to exceed December,
     2011.

Id. at 3.

In its opposition to the Motion, the Government notes that Crooker is presently awaiting sentencing and designation to a BOP facility and points out that the responsibility for assigning federal prisoners to particular corrections facilities has been specifically granted to the BOP.  See Memorandum in Support of Government's Objection to Motion for Injunction ("Government's

5

Mem.") at 1 (citing 18 U.S.C. § 3621(b)).[2]  The Government contends that as long as the BOP considers the resources of the facility, the nature and circumstances surrounding the offense, the history and characteristics of the prisoner, statements by the sentencing court, and any relevant policy statement by the United States Sentencing Commission, the BOP has "virtually unlimited discretion to place inmates wherever it deems appropriate," id. at 1-2 (quoting Muniz v. Sabol, 517 F.3d 29, 40 (1st Cir. 2008)).

The Government also argues that Petitioner has received appropriate medical treatment and that his health care needs have been addressed both prior to and since the filing of the Petition. See id. at 2.  While acknowledging that cataract surgery was recommended for Petitioner's right eye, the Government points to a statement from the ophthalmologist, Dr. David A. Klibanoff, that "the surgery can be delayed as long as necessary to accommodate final facility.  There should be no short term risk to prisoner."[3]

---

[2] The Government also notes that "under 18 U.S.C. § 4086, the United States Marshals Service has a duty to 'provide for the safe-keeping of any person arrested, or held under the authority of any enactment of Congress pending confinement to an institution.'"  See Memorandum in Support of Government's Objection to Motion for Injunction ("Government's Mem.") at 1 n.1.

[3] This statement was made in response to a written inquiry from Heather Bonsell, a nurse consultant who reviews requests for outside medical care of inmates in the custody of the United States Marshals Service ("USMS") to determine if they are covered under USMS policy. See Government's Response to Petition for Writ of Habeas Corpus (Dkt. #8) ("Government Response"), Attachment ("Att.") 1 (Declaration of Alison Hodgkins ("Hodgkins Decl.")), Exhibit ("Ex.") 5 at 39 (Handwritten response at bottom of Letter from Bonsell to Klibanoff of 4/13/11).  In the inquiry, Nurse Bonsell explained that prisoners are usually in USMS

6

Id. (quoting Government's Response to Petition for Writ of Habeas Corpus (Dkt. #8) ("Government Response"), Attachment ("Att.") 1 (Declaration of Alison Hodgkins ("Hodgkins Decl.")), Exhibit ("Ex.") 5 at 39 (Handwritten response at bottom of Letter from Bonsell to Klibanoff of 4/13/11)).

With respect to Petitioner's request for gallbladder surgery, the Government states that a consultation with a general surgeon has been scheduled. See Government's Mem. at 2. The Government also cites the May 6, 2011, Declaration of Steven S. Wolf ("Wolf Decl."), the Medical Director for the USMS, Prisoner Operations Division ("POD"), Office of Interagency Medical Services ("OIMS"). See id.; see also id., Att. 1 (Wolf Decl.) ¶ 1. In that declaration, Dr. Wolf states, in part, that:

> 3. ... [W]e have reviewed medical documentation regarding Mr. Crooker's medical care while in USMS custody. Based on that review, it is my professional opinion that medically appropriate standards of care have been met with regard to the evaluation and treatment planning of Mr. Crooker's ophthalmic and dental complaints. We have been advised that the detention facility has scheduled an appointment for Mr. Crooker with a consulting surgical specialist to evaluate Mr. Crooker's "gallbladder" complaint. Once an opinion is

---

custody for a short period of time (less than a year) and that they can be moved at any time or sent to other facilities or another agency's custody depending on their custody status. See id. Nurse Bonsell further explained that "[m]any medically appropriate but non-emergent procedures can and should be delayed until after the prisoner's judicial status is resolved, as long as there is no significant risk to the prisoner." Id. She then asked Dr. Klibanoff to answer in writing two questions: "Would you consider this surgery to be elective or urgent in nature," id., and "Could this surgery be delayed up to 12 months without significant harm to the patient," id. Dr. Klibanoff responded as quoted above.

7

>    received from the consulting surgical specialist, OIMS
>    will determine the medically appropriate course of action
>    in accordance with USMS policy and the standards of care.
>
>    4. With regard to Mr. Crooker's medical complaints,
>    it is my opinion as the OIMS Medical Director for
>    Prisoner Operations that movement of this individual
>    should have no negative impact on his health or medical
>    continuity of care within medically acceptable standards.
>    In fact, movement to his final destination may expedite
>    definitive resolution of his complaints as determined by
>    the receiving medical authority.

Wolf Decl. ¶¶ 3-4.

In addition to his declaration, the record also contains a letter from Dr. Wolf dated April 22, 2011, addressed "To Whom It May Concern." Government Response, Att. 1, Ex. 6 (Letter from Wolf To Whom It May Concern of 4/22/11). With reference to Crooker's gallstone, Dr. Wolf notes that an ultrasound was approved by the USMS and performed at an outside facility on March 24, 2011.

> It revealed the presence of a single gallstone in the
> gallbladder but no other pertinent findings. It should
> be noted, however, that under current standards of care
> in the United States, the presence of gallstones without
> abdominal symptoms is not an indication for
> cholecystectomy (removal of the gallbladder) in most
> instances. I am not aware of any complaints by Mr.
> Crooker to Wyatt health authorities suggestive of
> symptomatic gallbladder disease during his period of
> custody at Wyatt, although Mr. Crooker indicates in his
> affidavit that he believes that he has had three
> gallbladder attacks in the past. However, in response to
> Mr. Crooker's concerns, Wyatt medical staff are
> submitting a request to the USMS for consultation with a
> general surgeon, which will be approved.

Id. at 1.

Regarding Crooker's dental concerns, Dr. Wolf recounted that Petitioner had submitted a request for dental services on October

8

15, 2010, complaining of a problem with a stainless steel crown on a molar that had sharp edges causing cuts to his tongue and cheek; that he was seen for this problem on November 19, 2010; that at that time the sharp edge was smoothed and temporary restorative material was placed in a gap in the tooth; and that the dental note from that date indicated that Crooker felt better after the procedure. Id. at 1-2. Dr. Wolf related that on December 1, 2010, Crooker had submitted a request for a dental cleaning, "stating this had been done only once before in 7 years," id. at 2, and that he had received a cleaning on December 10, 2010. Id. Dr. Wolf continued:

> On 12/26/10, Mr. Crooker submitted a request stating that a jagged edge from a missing filling was causing cuts and bleeding to the inside of the lip. He followed up with a repeat request on 1/21/10 [sic], further specifying that the previous tooth repair (of 11/19/2010) was falling apart, causing toothaches, and that a second tooth with sharp edges was causing cuts in his month. He was seen by the dentist on 1/28/11, at which time both issues were addressed, with amalgam placement and smoothing of the respective teeth.

Id.

Addressing Crooker's belief that he should be supplied with dentures or partial plates, Dr. Wolf stated:

> USMS health care standards for prisoners set forth general precepts for provision of medically necessary care for prisoners. Among the precepts used in determining medical necessity is that there is no other intervention that produces comparable results in a more cost-effective manner. OIMS has confirmed that Wyatt Detention Facility can provide a soft diet appropriate for prisoners with chewing difficulties. While dentures or partials may be a desirable longterm solution, a soft

9

> diet is an accepted, reasonable accommodation to meet Mr. Crooker's dietary needs while in USMS custody, if he chooses to accept it. We do not believe it should be incumbent upon the USMS to provide Mr. Crooker with dentures or similar prosthetic devices, at considerable expense and solely for his convenience, when he can be offered a reasonable accommodation during his period of USMS custody.

Id.

The letter concludes with Dr. Wolf expressing the "belief that Mr. Crooker's serious health and dental needs have been appropriately addressed and his treatment is consistent with current health care standards in the correctional setting." Id.

### Question Presented

The question presented by the instant Motion for Injunction and Government's Objection is whether this Court has jurisdiction to issue an order requiring that Crooker continue to be detained at Wyatt and prohibiting his transfer to the BOP until he receives surgeries which he contends are "required." Motion at 3. This question is separate from the issue of whether his conditions of confinement, involving alleged "medical maltreatment," Petition at 4, violate rights guaranteed to him under the United States Constitution, see id. For the reasons which follow, the Court concludes that it does not have jurisdiction to grant the relief sought by the Motion.

### Analysis

It is clear that the relief Crooker seeks will interfere or delay his placement at the institution designated by the BOP

10

following his sentencing.  Thus, by granting the Motion the Court would, in effect, be determining where Crooker will initially serve his sentence.  However, this Court lacks jurisdiction to make this determination.  See United States v. Dragna, 746 F.2d 457, 458 (9th Cir. 1984)("the court has no jurisdiction to select the place where the sentence will be served"); see also Meachum v. Fano, 427 U.S. 215, 224, 96 S.Ct. 2532 (1976)("The initial decision to assign the convict to a particular institution is not subject to audit under the Due Process Clause ...."); United States v. Voda, 994 F.2d 149, 152 (5th Cir. 1993)("It is clear that the district court lacked the authority to designate the place of confinement in sentencing Voda ...."); United States v. Jalili, 925 F.2d 889, 894 (6th Cir. 1991)("a district court cannot attempt to assert authority over the location of confinement"); Dwinells v. United States, Civil Action Nos. 06-11977-PBS, (CR 04-10010-PBS), 2006 WL 3335460, at *2 (D. Mass. Nov. 15, 2006)("The placement of a prisoner is within the purview of the [BOP], and this [c]ourt is without jurisdiction to [o]rder the [BOP] to transfer Dwinells as he requests."); cf. Rogers v. United States, 180 F.3d 349, 357 (1st Cir. 1999)("district court lacked jurisdiction under § 2255 to challenge [BOP's] designation of facility for otherwise lawful sentence")(citing Jalili, 925 F.2d at 893).

The authority to determine the place of confinement resides exclusively in the executive branch of government and is delegated

11

to the BOP. Dragna, 746 F.2d at 458; see also Muniz v. Sabol, 517 F.3d at 32 ("The authority to assign and transfer prisoners to places of confinement is conferred on the BOP by 18 U.S.C. § 3621(b).");[4] Voda, 994 F.2d at 152 ("The [BOP] is given this responsibility because the executive branch and not the judicial branch is responsible for administering sentences."); id. at 151 ("[O]nly the [BOP] has the actual authority to designate the place of incarceration."); Ballew v. Sanders, No. CV 09-01977-DOC (SS), 2010 WL 986762, at *3 (C.D. Cal. Feb. 18, 2010)("The BOP is solely responsible for designating the place of confinement)(citing 18 U.S.C. § 3621(b)). Thus, this Court is without authority to order that Crooker remain confined at Wyatt and preclude a contrary determination by the BOP. See Brown v. Holder, Civil Action No. 09-2364 (RMU), 2011 WL 1002704, at *2 (D.D.C. Mar. 22, 2011)("The

---

[4] Crooker contends that he is "a pretrial detainee who ... has not yet been sentenced and therefore 18 U.S.C. § 3621(b) ... doesn't even come into play." Crooker's Second Traverse under 28 U.S.C. §2248 (To Government's Objection to Motion for Injunction) (Dkt. #11) ("Crooker's Second Traverse") at 1. It is questionable whether Crooker, having plead guilty to serious felony charges and facing an expected fifteen year sentence, qualifies as a pretrial detainee. See Collazo-Leon v. U.S. Bureau of Prisons, 51 F.3d 315, 317 (1st Cir. 1995)(noting argument that plaintiff is no longer a pre-trial detainee as he had pled guilty and was scheduled for sentencing); see also Fassler v. United States, 858 F.2d 1016, 1018 (5th Cir. 1988)(noting that defendant found guilty at trial "is now legally in federal custody" and "his request for release from pretrial confinement is moot"); Thorne v. Warden, Brooklyn House of Detention, 479 F.2d 297, 299 (2nd Cir. 1973)(concluding that because defendant "is now held as a convicted defendant rather than merely on a criminal charge not yet brought to trial, the issue as to the legality of his continued *pretrial* detention has been mooted"). Regardless, the Motion for Injunction clearly seeks to prevent Crooker's placement in the penal or correctional facility designated by the BOP pursuant to 18 U.S.C. § 3621(b). Therefore, Crooker's contention that the statute is "irrelevant," Crooker's Second Traverse at 1, is rejected.

federal statute governing the BOP's authority expressly strips this court of jurisdiction to review certain decisions made by BOP officials. It is well settled that this exclusion applies to cases in which inmates are challenging their security classifications and facility designations.")(citation omitted); see also Muniz, 517 F.3d at 40 (explaining that "as long as the BOP 'considers' the five factors,[5] it has virtually unlimited discretion to place inmates wherever it deems appropriate"); id. at 32 ("In addition, the BOP may at any time, having regard for the same matters, direct the transfer of a prisoner from one penal or correctional facility to another.")(internal quotation marks omitted).

Moreover, although Crooker implies that "required surgeries," Motion at 3, have been scheduled (or will be scheduled) to be performed locally, see id., there is no evidence in the record which supports this contention. No surgeries have been scheduled to be performed locally, and there is no evidence that any will be. To the contrary, the medical evidence in the record indicates that Crooker's cataract surgery may be delayed until his placement by the BOP at a "final facility," Hodgkins Decl., Ex. 5 at 39, and that there is no "short term risk to [Crooker]," id., in doing so, see id. The words "short term," id., as used by Dr. Klibanoff in

---

[5] The "five factors," broadly, "are the facility, the offense, the prisoner, any statement of the sentencing court, and any pertinent policy statement issued by the Sentencing Commission." Muniz v. Sabol, 517 F.3d 29, 32 (1st Cir. 2008).

his response to Nurse Bonsell, are reasonably understood to mean up to twelve months, see id.; cf. Preston v. Normand, Civil Action No. 10-1667, 2010 WL 5375966, at *9 (E.D. La. Nov. 17, 2010)("Mere delay in receiving care is not in and of itself a constitutional violation."). With respect to Crooker's gallstone, there presently is no medical evidence in the record which indicates that surgical intervention is necessary.[6] As previously noted, the USMS has stated that it will approve a consultation with a general surgeon in response to the statements in Crooker's Affidavit that he has suffered three gallbladder attacks in the past. Hodgkins Decl., Ex. 6 (Letter from Wolf To Whom It May Concern of 4/22/11) at 1; see also Petitioner's Aff., ¶ 12.

Lastly, it bears noting that Crooker is not seeking a brief delay in his transfer to the BOP but a delay of several months. See Motion at 3 (requesting that his "transfer be ... delayed for whatever time is necessary to obtain the required surgeries,

---

[6] Crooker states in his affidavit that after a gallbladder attack in 2010 he was told by a physician's assistant ("PA") "that [he] needed surgery for the gallstone ...." Petitioner's Aff. ¶ 14. The Court does not consider this hearsay statement allegedly made by a PA as medical evidence. See Morphis v. Slaine County Detention Facility, No.4:08CV00591 JMM, 2009 WL 3378267, at *4 (E.D. Ark. Oct. 16, 2009) ("Although Plaintiff challenges Dr. Taggert's opinion, he has presented no evidence, other than his own testimony, to the contrary."); cf. id. ("[I]n the face of medical records indicating that treatment was provided, and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that he does not believe he received adequate treatment[.]")(citing Dulany v. Carnahan, 132 F.3d 1234, 1240 (8th Cir. 1997)). The Court similarly does not consider Crooker's hearsay statements regarding what "[t]he Wyatt doctor," Motion at 2, told him to be medical evidence.

estimated not to exceed December, 2011"). Equally, if not more significant, the reason for the requested delay is not a life-threatening condition. Thus, Crooker's circumstances stand in sharp contrast to those which existed in Roba v. United States, 604 F.2d 215, 218 (2nd Cir. 1979). In Roba, the petitioner had been diagnosed with an acute form of heart failure and the doctor recommended that cardiac by-pass surgery be performed "in the near future and warned that if any stress is placed upon Roba, there is a substantial likelihood that he will suffer another heart failure or heart attack, either of which could very likely be fatal." Id. at 217. Citing this evidence, the Second Circuit found that Roba, who was facing removal from New York to California by the USMS, had "a right not to be forceably transported by government officials while he is in a life-threatening condition." Id. at 218. The Roba court held that the petitioner was entitled to challenge by habeas corpus "the allegedly unlawful conditions of his imminent custody," id. at 219. Here there is no suggestion that Crooker's medical problems are as grave as those which existed in Roba. See Ilina v. Zickefoose, 591 F.Supp.2d 145, 147 (D. Conn. 2008)(noting that "a gravely ill prisoner's 'right not to be forceably transported by government officials' can be protected through a conditions-of-confinement challenge brought pursuant to § 2241")(quoting Roba, 604 F.2d at 219).

**Conclusion**

For the reasons stated above, I recommend that the Motion for Injunction be DENIED for lack of jurisdiction as this Court lacks authority to interfere with Crooker's designation and placement at a BOP facility. Any objections to this Report and Recommendation must be specific and must be filed with the Clerk of Court within fourteen (14) days of its receipt. See Fed. R. Civ. P. 72(b); DRI LR Cv 72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district court and of the right to appeal the district court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

*/s/ David L. Martin*
DAVID L. MARTIN
United States Magistrate Judge
May 20, 2011